**In re Robin Rene THOMPSON, Debtor.**

No. 03–02878S.

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

April 29, 2004.

Wil L. Forker, Sioux City, IA, for debtor.

John M. Murray, Storm Lake, IA, for BG Investments.

### ORDER RE: MOTION FOR RELIEF FROM STAY

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matter before the court is the motion for relief from stay filed by BG Investments. Debtor objects to the motion. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Final hearing was held April 27, 2004 in Sioux City. John M. Murray appeared as attorney for BG Investments. Wil L. Forker appeared as attorney for the debtor, Robin Rene Thompson.

**2**

### Findings of Fact

Thompson filed her chapter 13 petition on July 30, 2003. On her schedule A, she listed real property described as: "Homestead: Lot 21, Block 1 of Hyde Park Addition to Sioux City, Iowa in the County of Woodbury and State of Iowa." She described herself as "Fee Owner." She claimed the homestead as exempt property. No one objected to the exemption.

In her schedule D, she listed Bank of America, N.A. as holder of first and second mortgages against the homestead. She listed the value of the real estate as $62,000.00 and the amounts of the first and second mortgages as $47,000.00 and $10,500.00, respectively. Thompson listed the Woodbury County Treasurer as the holder of an unsecured priority claim in the amount of $2,000.00 for real estate taxes for 2002–2003. She did not list BG Investments as a creditor. Notice of the filing of the bankruptcy case was served on the Woodbury County Treasurer at 7th & Douglas St., Sioux City, IA 51101. Dianne McCall, a deputy treasurer in charge of monitoring taxpayer bankruptcies, testified that the county treasurer did not receive notice of the case. She also testified that a notice addressed to the foregoing location should have reached the treasurer's office.

On September 30, 2003, Thompson amended her schedules. Relevant to the pending dispute, she amended the amount of real estate taxes to show an estimated debt of $1,096.00. Also on September 30, Thompson filed an amended chapter 13 plan. She proposed to pay $1,319.82 per month to the trustee for 36 months. She proposed also to pay into her plan any additional disposable income and tax refunds. Thompson's plan promised payment to Woodbury County the amount of its allowed claim for the real estate taxes listed in her amended schedules. She also proposed to pay, through the trustee, her regular monthly mortgage payments and the arrears on the mortgages. The proposed plan was served on all creditors and parties listed on the matrix. BG Investments was not served with the proposed plan. The court confirmed Thompson's amended plan on December 4, 2003.

The trustee filed her report on claims on December 12, 2003. Neither Woodbury County nor BG Investments had filed claims. The deadline for filing was November 17, 2003 for all creditors except governmental units. For governmental units, the deadline was 180 days after the filing of the petition.

Thompson's homestead was sold by Woodbury County at tax sale on June 18, 2001. BG Investments was the purchaser. The purchase price was $434.00. The county treasurer gave BG Investments a Certificate of Purchase. Iowa Code § 446.16. The treasurer did not notify Thompson of the identity of the purchaser.

BG Investments did not receive notice of the bankruptcy at the outset of the case. It first learned of the case when it received a letter dated February 17, 2004 from Thompson's bankruptcy attorney. The attorney enclosed the initial notice of the bankruptcy case that had been sent to creditors in July 2003.

On March 3, 2004, the Woodbury County Treasurer filed a proof of claim (claim no. 8) in the amount of $4,633.00 for tax assessments dated July 2000, 2001, 2002, and 2003. Attached to the county's proof of claim was a tax statement computed through the end of March 2004. It showed the sale to BG Investments for $434.00 for delinquent taxes for the tax years: 2000/2001, 2001/2002, 2002/2003, and 2003/2004. This information appears to be incorrect as the sale to BG Investments was for taxes which became delinquent

April 1, 2001. The statement shows, and the testimony supports, that BG Investments paid taxes on the property that became delinquent after the tax sale. They were as follows:

| October 31, 2001 | $677.00 |
| April 22, 2002 | 626.00 |
| October 28, 2002 | 743.00 |
| April 24, 2003 | 677.00 |
| October 28, 2003 | 623.00 |

The treasurer's statement was not attached to movant's exhibit 4, which was also the county treasurer's claim form. Another tax installment became delinquent April 1, 2004. Glen Hanson, a relative of the debtor, attempted to pay this installment. However, prior to his effort, the bankruptcy trustee paid the county treasurer $1,452.00 as a plan distribution on the county's tax claim, and part of the trustee's payment was used by the treasurer to pay the amount which became delinquent on April 1, 2004. The balance of the trustee's payment was used to reduce the county's filed claim. The treasurer applied Glen Hanson's payment to the county's filed claim.

On March 4, 2004, the trustee filed an amendment to her report on claims, recommending allowance of the county's priority claim for $4,633.00. Said another way, she did not object to the claim. Notice was given to all parties of the amended report. No one filed objection to the report, and no party has objected to the county's claim. Notwithstanding the trustee's recommendation to allow the proof of claim, and the absence of any other party's objection, the county appears to have no claim against the debtor. Robert Knowler, the county treasurer, testified that as a result of the tax sale, and the payment of subsequent delinquent taxes by BG Investments, the county has been fully paid.

Currently, there are no delinquent taxes on the property. Knowler says that after the purchase of the property at a tax sale, the county merely collects any payments of the delinquent taxes and upon receiving sufficient payments, turns the payments over to the tax-sale buyer at the appropriate time to effectuate a redemption from the sale. Since the filing of the county's priority claim, the trustee has paid the treasurer $1,452.00. The treasurer is holding this in a trust account, until sufficient payments have been made to permit payment of the full amount required to redeem the property from sale. As of the date of trial, the treasurer would have to be paid approximately $2,633.00 plus some amount of interest in order to permit redemption from the sale to BG Investments.

On March 8, 2004, BG Investments filed its proof of claim, identified as claim number 9. It claimed to be owed $4,633.00 as a secured creditor. BG Investments asserts in its claim that after purchasing the property at tax sale in 2001, it paid subsequent years of delinquent taxes. These taxes included those becoming delinquent after the filing of Thompson's bankruptcy. The trustee filed a second amendment to her claims report, recommending allowance of the claim of BG Investments. She served notice of her report on all parties, and no one objected to the report. No party has objected to the claim. BG Investments admits its filed claim is in excess of the correct amount. The amount of the claim as of March 8 would be reduced by the $548.00 payment on the April 1, 2004 installment.

## Discussion

█ BG Investments moves for relief from the automatic stay of 11 U.S.C. § 362(a) so that it may serve on the debtor and others notice of expiration of right to redeem from the tax sale. Iowa Code

§ 447.9(1). The notice must inform the possessor of the property, a person in whose name it is taxed, any mortgagees, and certain other persons that unless redemption is made within 90 days of the completion of service, a tax deed will issue. *Id.* Service is complete on the filing of an affidavit of service under Iowa Code § 447.12.

BG Investments says that pursuant to Iowa Code § 446.37, it must, within three years after the tax sale, complete action which qualifies it to obtain a tax deed, or its certificate of purchase will be canceled, and its lien extinguished. The critical date for completion of action required under the statute is June 18, 2004. BG Investments contends that in order to preserve its lien against the property, it must complete service of notice of the right of redemption by that date. It asserts that the running of the 90–day redemption period and the completion of additional actions necessary to acquire the deed may be completed after the running of the three-year period. The debtor agrees with that proposition.

BG Investments argues that under the plan, its claim will not be paid in full by the end of the three-year period. BG Investments says that it has not been offered adequate protection of its lien against the real property, and therefore relief should be granted under 11 U.S.C. § 362(d)(1).

Thompson argues that her plan provides that Woodbury County will be paid over time. Amended Plan, ¶ 3. Moreover, Thompson contends that the rights of BG investments as holder of a secured claim may be modified under 11 U.S.C. § 1322(b)(2). She says also that the plan may provide for the curing of a default. 11 U.S.C. § 1322(b)(3). Thompson says that BG Investment's claim has been modified by the plan as permitted by the Bankruptcy Code, and that the stay should not be modified to permit BG Investments to serve the notice which would commence the running of the final 90–day period of redemption.

■ I disagree with Thompson's argument. Although Thompson may propose a plan which would modify the rights of the holder of a secured claim, she has not done so. Moreover, such treatment of the creditor must still meet the confirmation requirements of section 1325 of the Code. Both parties agree that BG Investments is a secured creditor. As such, a plan may not be confirmed over its objection unless the plan provides that it will retain the lien securing the claim and it will receive the present value of its allowed claim. 11 U.S.C. § 1325(a)(5)(B). The lien of BG Investments must be protected over the period it would receive payment on its claim.

Thus although a plan could provide that BG Investment's claim be paid over time— the life of the 36–month plan—I do not understand how Thompson could prove that such a plan would protect the creditor's lien for the same period. The risk to BG Investments is that if it does not complete certain actions by June 18, 2004, its lien would be canceled by the county treasurer pursuant to Iowa Code § 446.37.

I will not consider an unfiled plan as a defense to the motion for relief. Thompson's confirmed plan treats the county's claim as a priority, *unsecured* claim. Thompson's amended plan does not provide retention of a lien relating to the claim. It does not provide for the secured claim of BG Investments. Indeed, the evidence indicates that neither Thompson nor her attorney knew the identity of the tax certificate holder prior to confirmation of the amended plan. The confirmed plan does not protect BG Investments' lien.

■ Thompson argues that a plan may prohibit or enjoin the county treasurer

from canceling the lien held by BG Investments by virtue of its tax sale purchase certificate. As I have noted, such a plan is not before the court. But even if it were, the contention is not without problems. As I have stated, the county does not appear to be a creditor. Generally, a confirmed plan binds only debtors and creditors. 11 U.S.C. § 1327(a).

■ It is questionable that the automatic stay tolls the running of the three-year period during which BG Investments must complete the acts necessary to obtain a tax deed. Statutory time periods are not tolled by section 362(a). *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 276 (8th Cir.1983). The time period in question respects the time within which a creditor must act to preserve its rights. If the creditor fails to act, the reaction by the county treasurer in canceling the certificate of purchase injures the creditor, not the debtor. BG Investment's rights are at risk, and Thompson has failed to show how these rights are protected under the confirmed amended plan. Thompson has not offered BG Investments adequate protection of its lien. Therefore, BG Investments is entitled to relief under 11 U.S.C. § 362(d)(1).

IT IS ORDERED that the motion for relief from the automatic stay is granted. BG Investments may serve its notice of expiration of rights of redemption under Iowa Code § 447.9, and it may take steps after the running of the period of redemption to obtain a tax deed from the county treasurer. Judgment shall enter accordingly.